```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
KUMRITA JULEVIC, pro se,                           :
                                                   :
                        Plaintiff,                 :
                                                   :        **MEMORANDUM & ORDER**
            -against-                              :        13-CV-850 (DLI) (RML)
                                                   :
STATIONARY ENGINEERS LOCAL 670,                    :
WELFARE FUND,                                      :
                                                   :
                        Defendant.                 :
------------------------------------------------------------------ x
```
**DORA L. IRIZARRY, Chief United States Chief District Judge:**

On January 24, 2013, *pro se* plaintiff Kumrita Julevic ("Plaintiff" or "Julevic") initiated this action against defendant Stationary Engineers Local 670 Welfare Fund ("Defendant" or the "Fund") in the Civil Court of the City of New York, County of Queens, Small Claims Part 45, seeking to recover money arising out of nonpayment of health insurance claims by the Fund pursuant to the Employee Retirement Income Security Act ("ERISA"). (*See generally* Complaint ("Compl."), Ex. A to Def.'s Notice of Removal, Dkt. Entry No. 1.) On February 14, 2013, Defendant filed a Notice of Removal, removing the action to this Court. (*See* Def.'s Notice of Removal, Dkt. Entry No. 1.) Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (*See* Mem. of Law in Support of Def.'s Mot. For Summ. J. ("Def's Mem."), Dkt. Entry No. 18-4.) Plaintiff opposes Defendant's motion. (*See* Pl.'s Reply in Opp. To Def.'s Mot. For Summ. J. ("Pl.'s Opp."), Dkt. Entry 19.) For the reasons stated below, Defendant's motion for summary judgment is granted.

# BACKGROUND[1]

The Fund is an "employee welfare benefit plan" within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(1). (Def.'s 56.1 ¶ 3; Declaration of Gina Andujar In Support of Defendant's Motion for Summary Judgment, dated April 26, 2013 ("Andujar Decl.") ¶ 3, Dkt. Entry No. 18-1.) The Fund is administered by a Board of Trustees composed of an equal number of employer and employee representatives as required by Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). (Def.'s 56.1 ¶ 3; Andujar Decl. ¶ 3.) The Fund is governed by an Agreement and Declaration of Trust and plan documents, including the Local 670 Welfare Fund Summary Plan Description ("SPD"), which sets forth the eligibility requirements for coverage, the type of benefits provided, limitations on those benefits, and the procedures for claiming benefits. (Def.'s 56.1 ¶ 4; Andujar Decl. ¶ 4.)

As provided in the SPD, the Fund provides hospital and medical coverage and other health benefits to individuals working in "covered employment," meaning individuals who work in a bargaining unit position for an employer who is a signatory to a collective bargaining agreement with Defendant and other relevant unions (collectively, the "Union"), and to eligible dependents of those individuals. (Def.'s 56.1 ¶ 5; Andujar Decl. ¶ 5.) The coverage that the Fund provides is financed by contributions it receives from employers who are obliged by the collective bargaining agreements to contribute to the Fund on behalf of their covered employees. (Def.'s 56.1 ¶ 5; Andujar Decl. ¶ 5.)

---

[1] Plaintiff has not responded to Defendant's Local Civil Rule 56.1 Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment ("Def.'s 56.1" or "Defendant's 56.1 Statement"), Dkt. Entry No. 18-3. Local Rule 56.1(b) requires an opposing party to submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried." If the opposing party fails to controvert a fact set forth in the movant's Rule 56.1 statement, by citing to admissible evidence, that fact is deemed admitted pursuant to the local rule. *See* Local R. 56.1(c), (d); *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Therefore, the Court deems admitted, where supported by evidence in the record, the facts set forth in Defendant's 56.1 Statement. The following facts are undisputed unless otherwise noted.

For the relevant time period in this action, Julevic was a cleaner employed at 120 Broadway, New York, New York and a participant in the Fund. (Def.'s 56.1 ¶ 6; Andujar Decl. ¶ 6.) Julevic's job was a bargaining unit position with an employer who is a signatory to a collective bargaining agreement with the Union. (Def.'s 56.1 ¶ 6; Andujar Decl. ¶ 6.)

On December 7, 2009, the Fund received a claim for emergency room services provided to Julevic by North Shore University Medical Center (the "Hospital") on October 17, 2009. (Def.'s 56.1 ¶ 7; Andujar Decl. ¶ 7.) The amount billed was $1,835.00. (Def.'s 56.1 ¶ 7; Andujar Decl. ¶ 7; Andujar Decl., Ex. B) The Fund rejected Julevic's claim on February 24, 2010 and requested additional information. (Def.'s 56.1 ¶ 8; Andujar Decl. ¶ 8.) Specifically, the Fund requested an explanation for the emergency room visit and the facts and circumstances giving rise to the visit. (Def.'s 56.1 ¶ 8; Andujar Decl. ¶ 8.) The notice explained that Julevic's claim was conditionally rejected and provided room for Julevic to provide a statement as to how and where the injury at issue occurred. (Def.'s 56.1 ¶ 9; Andujar Decl. ¶ 9; Andujar Decl., Ex. C.) Julevic responded to the Fund's rejection notice and stated, "I work [a] hard job, and while I was cleaning my arm started to hurt, I was in pain that's why I went to [the] doctor." (Def.'s 56.1 ¶ 10; Andujar Decl. ¶ 10; Andujar Decl., Ex. C.)

On March 18, 2010, the Fund followed up with a second rejection letter to Julevic, asking her to provide more information about her injury. (Def.'s 56.1 ¶ 11; Andujar Decl. ¶ 11; Andujar Decl., Ex. D.) On April 1, 2010, Julevic responded that she was "hurt on [her] job on 120 Broadway in Manhattan" and she was "cleaning a lot . . . and lifting bags and [her] left arm got hurt." (Def.'s 56.1 ¶ 12; Andujar Decl. ¶ 12; Andujar Decl., Ex. E.) On April 13, 2010, the Fund again rejected Julevic's claim and directed Julevic to seek coverage for her workplace injury through her employer's worker's compensation insurance carrier. (Def.'s 56.1 ¶ 14;

Andujar Decl. ¶ 14.) In an undated letter, received by the Fund on or around November 30, 2011, more than a year and a half later, Julevic wrote that she would appeal the Fund's rejection and that she "never had a problem on the job," without clarifying how or where her alleged injury occurred. (Def.'s 56.1 ¶ 15; Andujar Decl. ¶ 15; Andujar Decl., Ex. F.)

Julevic's appeal was presented to the Defendant's Board of Trustees in December 2011. (Def.'s 56.1 ¶ 17; Andujar Decl. ¶ 17.) The Board of Trustees directed the Fund's third party administrator ("Third Party Administrator") to obtain Julevic's file from the Hospital to analyze Julevic's claim further. (Def.'s 56.1 ¶ 18; Andujar Decl. ¶ 18.)

In February 2012, the Third Party Administrator requested medical records from the Hospital. (Def.'s 56.1 ¶ 19; Andujar Decl. ¶ 19.) The Hospital did not respond initially, and the Third Party Administrator wrote to Julevic to obtain her medical records and furnish her records to the Fund. (Def.'s 56.1 ¶ 20; Andujar Decl. ¶ 20; Andujar Decl., Ex. G.) Julevic did not provide any records. (Def.'s 56.1 ¶ 21; Andujar Decl. ¶ 21.) However, on September 2, 2012, the Hospital's counsel faxed the notes from Julevic's October 2009 visit to the Fund. (Def.'s 56.1 ¶ 21; Andujar Decl. ¶ 21; Andujar Decl., Ex. H.) The October 2009 hospital notes indicate that Julevic came to the emergency room with left shoulder pain from a slip and fall that occurred one week before. (Def.'s 56.1 ¶¶ 22, 25; Andujar Decl. ¶¶ 22, 25; Andujar Decl., Ex. H.)

On September 10, 2012, the Fund notified Julevic that the Board of Trustees would review the October 2009 hospital notes at the next Board of Trustees meeting. (Def.'s 56.1 ¶ 23; Andujar Decl. ¶ 23; Andujar Decl., Ex. I.) Thereafter, on December 19, 2012, the Fund's Board of Trustees concluded that Julevic's claim was denied correctly because it was "[f]irst rejected for submi[ssion] to workers comp insurance," then rejected a second time because the "ER visit

was not within 72 hours of onset of injury." (Def.'s 56.1 ¶ 26; Andujar Decl. ¶ 26; Andujar Decl., Ex. J.) By letter dated January 3, 2013[2], the Fund informed Julevic that her appeal had been denied. (Def.'s 56.1 ¶ 27; Andujar Decl. ¶ 27; Andujar Decl., Ex. K.)

On February 4, 2013, Julevic brought this action against the Fund. (Compl.; Def.'s 56.1 ¶ 28; Andujar Decl. ¶ 28.)

## DISCUSSION

### I. Standard of Review

In reviewing Plaintiff's submissions, the Court is mindful that *pro se* submissions, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court should construe *pro se* submissions "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (emphasis omitted). Though a court need not act as an advocate for *pro se* litigants, in such cases there is a "greater burden and a correlative greater responsibility upon the district court to insure that constitutional deprivations are redressed and that justice is done." *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) (citation omitted). Nevertheless, a *pro se* party's bald assertions, if unsupported by evidence, are not sufficient to overcome a motion for summary judgment. *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material

---

[2] Exhibit K to the Andujar Declaration shows a date of January 3, 2012. (Andujar Decl., Ex. K.) This date is mistaken; the intended date was January 3, 2013. (*See* Def.'s 56.1 ¶ 27; Andujar Decl. ¶ 27.)

fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F. 2d 460, 465 (2d Cir. 1989)).

"[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply

6

on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

As noted in Footnote 2 *infra*, Plaintiff failed to controvert the facts set forth in movant's Rule 56.1 Statement. As such, the Court has deemed admitted, where supported by the evidence in the record, the facts set forth in Defendant's 56.1 Statement.

A denial of benefits under ERISA "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary [the] discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 622 (2d Cir. 2008) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Pursuant to the "general or default rule," the Court reviews ERISA benefit denials *de novo*. *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.,* 819 F.3d 42, 51-52 (2d Cir. 2016) (citing *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 385 (2002)).

Otherwise, "[i]f the insurer establishes that it has such discretion, the benefits decision is reviewed under [an] arbitrary and capricious standard." *Krauss*, 517 F. 3d at 622; *see also Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 145 (2d Cir. 2003) ("The Supreme Court . . . has indicated that plans investing the administrator with broad discretionary authority to determine eligibility are reviewed under the arbitrary and capricious standard.") Under the deferential arbitrary and capricious standard, the plan's decision may be overturned only if the decision "is without reason, unsupported by substantial evidence or erroneous as a

matter of law." *Pagan v. NYNEX Pension Plan*, 52 F. 3d 438, 442 (2d Cir. 1995) (citation and internal quotation marks omitted). It is the burden of the plan administrator to demonstrate that the plan gives the plan administrator the discretionary authority to determine eligibility or to construe the plan's terms. *Firestone Tire and Rubber Co.*, 489 U.S. at 115.

## II. Application of the De Novo Standard

The SPD is a written document required by ERISA, 29 U.S.C. § 1102(a), intended to summarize the provisions of an ERISA contract in a way that is "calculated to be understood by the average plan participant." *See* 29 U.S.C. § 1022(a). The primary method by which an employer communicates to its employees with respect to an ERISA plan is through a summary plan description, *Moore v. Metropolitan Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988), which "must not have the effect of misleading, misinforming or failing to inform participants and beneficiaries" with respect to a plan's provisions. 29 C.F.R. § 2520.102(b); *see also Heidgerd v. Olin Corp.*, 906 F.2d 903, 907-08 (2d Cir. 1990) ("ERISA and the regulations promulgated under it require that employees be given [summary plan descriptions]. . . . [T]he summary will be an employee's primary source of information regarding employment benefits, and employees are entitled to rely on the descriptions contained in the summary.").

In the instant case, there is no clear language in the SPD that grants the plan administrator or fiduciary discretionary authority. According to the section of the SPD entitled "Claim Appeals":

> The benefits provided may be changed at any time by the Board of Trustees. The Board of Trustees adopts rules for the payment of benefits under this program. These rules are uniformly applied by the Fund Office. Any member whose claim for benefits under the Plan is denied will be advised by the Trustees or their administrator in writing of the denial, and the specific reasons therefor [*sic*]. Upon receipt by the Trustees of written request within 60 days after being so advised of the denial, such Participant will be afforded an opportunity to meet with the Trustees for a full and fair review of both the claim and the decision rendered, including the right to review the Plan and any other

> pertinent documents and to submit issues and comments in writing. The result of such review by the Trustees shall be communicated in writing to the Participant within 60 days after the request for a review is received and shall include specific reasons for the decision.

(Andujar Decl, Ex. A at 25-26.) The SPD does not speak to the discretion of the plan administrator or fiduciary and, therefore, is insufficient to warrant a deferential standard of review. Notably Defendant does not advocate for the Court to utilize the deferential arbitrary and capricious standard of review, instead proposing review *de novo*. *See* Def's Mem. at 4. Accordingly, the Court will apply a *de novo* standard of review to the denial of Plaintiff's claim for benefits.

Federal courts interpreting ERISA plans employ the "familiar rules of contract interpretation." *Lifson v. INA Life Ins. Co. of N.Y.*, 333 F. 3d 349, 352-53 (2d Cir. 2003) (per curiam). Under a *de novo* standard of review, courts in this circuit construe the terms in ERISA plans in accordance with federal common law and give the terms of the plan their plain meanings. *Fay v. Oxford Health Plan*, 287 F.3d 96, 104 (2d Cir. 2002); *see also Perreca v. Gluck*, 295 F.3d 215, 223 (2d Cir. 2002) ("An ERISA plan must be interpreted and enforced in accordance with its plain meaning."). "Where the contract language is unambiguous, a court may construe the contract and grant summary judgment." *Fay*, 287 F.3d at 104. (quoting *Brass v. Am. Film Techs., Inc.*, 987 F. 2d 142, 148 (2d Cir. 1993) (alteration omitted). Ambiguities must be construed against the employer as the drafter of the disputed document, and in favor of the beneficiary in accordance with trust and contract principles of construction. *Firestone*, 489 U.S. at 110–12; *Masella v. Blue Cross & Blue Shield of Conn., Inc.*, 936 F.2d 98, 107 (2d Cir. 1991). Language is "ambiguous" when "it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire . . .

agreement." *See O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994) (internal quotation marks and citations omitted).

Here, the SPD states that benefits are provided for, *inter alia*, "[e]mergency first aid during the first visit for a treatment of an accidental bodily injury *within 72 hours following such injury*." (Andujar Decl, Ex. A at 13 (emphasis added).) Additionally, in the section titled, "General Exclusions and Limitations," the SPD states that hospital, surgical, or medical benefits are *not* provided for "[a]ny loss, or portion thereof, for which Worker's Compensation . . . [is] recovered or recoverable, or which would have been available but for a voluntary action by the participant." (Andujar Decl, Ex. A at 15.)

Plaintiff cannot claim benefits for her October 17, 2009 emergency room visit for two reasons. First, the hospital records show that Plaintiff reported that her slip and fall injury occurred one week prior to her visit. (Andujar Decl, Ex. H.) The SPD unambiguously states that benefits are provided for a first emergency room visit, if the beneficiary seeks treatment *within 72 hours* of the injury. (Andujar Decl, Ex. A at 13.) Therefore, treatment sought one week after sustaining an injury is not covered by the terms of the SPD. Plaintiff's claim properly was denied for this reason.

Second, the SPD does not provide hospital, surgical, or medical benefits, if a beneficiary can seek or has sought worker's compensation. (Andujar Decl, Ex. A at 15.) When asked where her injury occurred, Plaintiff admitted that "I work [a] hard job, and while I was cleaning my arm started to hurt . . . that's why I went to [the] doctor." (Andujar Decl, Ex. C.) There is no doubt from Plaintiff's own statement that she injured herself while on the job. When Defendant gave her a second opportunity to elaborate on how and where she was injured, Plaintiff reiterated that "I was hurt on my job on 120 Broadway . . . ." (Andujar Decl, Ex. D.) It was only after her

claim was rejected, more than a year and a half later, that Plaintiff recanted her previous statements and asserted she "never had a problem on the job," without further explaining where her injury took place. (Andujar Decl, Ex. F.) In her opposition to Defendant's summary judgment brief, Plaintiff only states that she "fel[l] on the floor while [she] was carrying [her] granddaughter." She does not deny that her injury took place at work, offers no evidence or counterstatements to show that her injury took place outside of work, and only unhelpfully claims that the hospital allegedly "said they accept [her insurance]." Therefore, Plaintiff's claim properly was denied for this reason as well.

Accordingly, since Plaintiff does not dispute that her injury took place more than 72 hours prior to her hospital visit or that her injury occurred at work, and she does not offer any alternative interpretations of the SPD, Plaintiff's claim for benefits properly was denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in its entirety.

SO ORDERED.

Dated: Brooklyn, New York
September 11, 2016

/s/
DORA L. IRIZARRY
Chief Judge